IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NAFIZ ABDULA MUSLEH,<br><br>　　　　Defendant. | 1: 04 CR 5086 AWI<br><br>ORDER REJECTING GOVERNMENT'S PROFFER OF EVIDENCE IN CAMERA (Document 95)<br><br>ORDER SETTING CONDITIONS OF RELEASE FOR DEFENDANT NAFIZ ABDULA MUSLEH |

This matter is before the Court on Bail Review. Defendant Nafiz Abdula Musleh has asked the Court to reconsider its prior order that he be detained as a flight risk and a danger. Musleh has offered additional resources for bond as well as an additional third party custodian, and requests the Court to reconsider its acceptance and reliance upon information which was communicated to it by the Government *in camera*.

**Prior Proceedings**

The charges in this action stem from an alleged sale of pseudoephedrine, which took place on or about April 13, 1999. Defendant was indicted on May 27, 1999, in action No. 99 CR F 5127 AWI, on charges of (1) conspiracy to possess and distribute methamphetamine knowing or having reasonable cause to believe that it will be used to manufacture methamphetamine; and

1

(2) possession and distribution of methamphetamine knowing or having reasonable cause to believe that it will be used to manufacture methamphetamine.  Defendant was arraigned on May 28, 1999, and on June 10, 1999, he was ordered released on conditions including Pretrial Office supervision and $95,000 property bond.  He continued on release without incident until May 15, 2001, when the charges were dismissed without prejudice on the Government's motion and the bond was later exonerated.

On April 8, 2004, based on the same 1999 sale and days before the expiration of the statute of limitations, 18 U.S.C. § 3282, defendant Nafiz Abdula Musleh and others were indicted on charges of (1) conspiracy to aid and abet the manufacture of methamphetamine; (2) conspiracy to possess and distribute methamphetamine knowing or having reasonable cause to believe that it will be used to manufacture methamphetamine; and (3) possession and distribution of methamphetamine knowing or having reasonable cause to believe that it will be used to manufacture methamphetamine.  Defendant was arraigned on April 16, 2004, at which time the Government requested that he be detained both as a flight risk and a danger.  Based upon the charges, a presumption in favor of detention applied.  18 U.S.C. § 3142(e).  A Detention Hearing was held on April 21, 2004, and the Government offered evidence *in camera* by way of the testimony of DEA agent Michael Bryson.  The information was offered and heard *in camera* based upon the Government's contention that revealing it would compromise one or more ongoing investigations and endanger a confidential source.  The Government relied upon *United States v. Terrones*, 712 F.Supp. 786 (S.D. Cal. 1989), as authority for its proffer of evidence *in camera*.  The Court ordered that defendant be detain as a flight risk and as a danger.

At defendant's request, a bail review hearing was held on July 27, 2005.  The matter was continued for further hearing to August 17, 2005, in order for the Government to determine whether there existed any continuing justification to keep the evidence previously offered *in camera* from the defendant.  The Government asserted that the same justification for keeping the information confidential which existed on April 28, 2004, still applied and declined to reveal the

information based upon its contention that doing so would compromise a confidential source. The Court again heard the testimony of agent Bryson *in camera*. Based upon agent Bryson's testimony, it is clear that there is no longer any ongoing investigation into any of the factual matters disclosed in the April hearing and there is no specific information which would indicate the existence of any threat to the confidential source by anyone involved in this action. The sole concerns were the general, albeit legitimate, concern for the safety of any confidential source whose identity is made public and the belief that revelation of the source's identity would compromise her/his usefulness to law enforcement in future investigations.

## Justification for Receiving Evidence In Camera

As already stated, the Government relies upon *Terrones, id.* as authority to present evidence relating to detention *in camera*. In *Terrones,* the Magistrate Judge initially ordered the defendant released on bond and two days later, the Government sought reconsideration and presented an affidavit to the Magistrate Judge *in camera*. At the request of the defense, the Magistrate Judge interviewed the person(s) referenced in the affidavit *in camera* outside the presence of both defendant and his counsel. The Magistrate Judge, relying at least in part on the information presented *in camera*, ordered the defendant detained as a flight risk and a danger to the community. *Id*. at 788.

The defendant sought *de novo* review by the District Judge. Upon review, the District Judge found that but for the *in camera* evidence, she would have ordered the defendant released on $500,000 property bond. *Id.* She instead ordered him detained as a flight risk and a danger. *Id*. The Court held:

> . . that this case presents rare and unusual circumstances that mandate the consideration of the in camera evidence. As to the issue of whether the defendant should be detained, **this evidence is very material and relevant as well as reliable**. The source(s) cannot be disclosed, nor can the information obtained from the source(s) be disclosed except in the most conclusory terms. There appears to be no other source of the information but for the confidential witness(es). Further, **there is a demonstrated risk of serious bodily harm or death to the source(s) if the court orders disclosure**; even detention of the defendant will not obviate the need for nondisclosure."

*Id.* at 790 (emphasis added). The Court went on to find that nothing in the Bail Reform Act prohibited the receipt of evidence in camera and that doing so did not violate Terrones' Fifth or Sixth Amendment rights.

      The evidence submitted *in camera* in this case does not meet the standard set out in *Terrones* and therefore the Court rejects it. Unless the Government chooses to disclose the information to defendant, it will not be considered in reaching a decision on the issue of bail. The information submitted in this case is stale as it related to events which occurred nearly two years ago, or more. While the information in *Terrones* was communicated directly to the Magistrate Judge by the source(s) of the information, the information testified to by agent Bryson is double and triple hearsay and thus there is no way to judge either the probative value or reliability of the evidence. There is no longer any ongoing investigation which might be compromised by revelation of the information.[1] There is not, and never has been, a showing of a "demonstrated risk of serious bodily harm or death to the source(s) if the court orders disclosure." The evidence submitted is relevant on the issue of bail, but not strongly so.

## The Appropriate *In Camera* Standard

      Even though the Court has ruled that the evidence submitted *in camera* in this action does not meet the standard established in the case on which the Government relies, it is appropriate to consider whether the procedures approved by *Terrones* comport with due process. *Terrones* is singular among reported cases in authorizing the receipt of evidence at a bail hearing entirely *in camera,* i.e., without disclosing at least a summary or the substance of the evidence to the defendant. For the reasons stated below, I conclude that the standards set forth in *United States v Abuhamra*, 389 F.3d 309 (2d Cir. 2004), strike the appropriate balance between the Government's interests and the defendant's Constitutional rights and should control determining

---

[1] It is doubtful that compromising an ongoing investigation is sufficient justification for receiving information *in camera* in any event. Neither *Terrones* nor any of the other cases discussing the issue relied on this factor to receive evidence at a bail hearing *in camera,* but the absence of this factor weighs against the receipt of evidence *in camera.*

4

whether to receive evidence *in camera* at a bail hearing.

In *Abuhamra*, the Second Circuit Court of Appeals reversed the District Court's decision to receive evidence entirely *in camera* (i.e. without providing a summary or synopsis of the evidence) in a post conviction bail motion. The Court held:

> *Ex parte* submissions may generally *not* be received in opposition to bail release because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings. An exception to this rule may be made only in cases in which there is a compelling need to maintain the secrecy of certain evidence, no alternative means of meeting that need exist other than *ex parte* submission, and the court carefully limits its sealing order only to materials genuinely implicating the compelling need. *See generally Waller v. Georgia,* 467 U.S. at 48, 104 S.Ct. 2210. Even in such rare circumstances, due process permits a court to consider *ex parte* evidence in opposition to bail release only upon substitute disclosure of the substance of the information to the defense and scrupulous review by the court of the reliability of the sealed materials.

*Abuhamra*, at 321. (Emphasis original).

In *Terrones,* the Court authorized the receipt of evidence *in camera* at a bail hearing based upon its finding that "nothing in the Bail Reform Act precludes it" and in reliance upon *United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985) and *United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1986). In *Abuhamra,* the Government relied upon *Acevedo-Ramos*, *Accetturo,* and *Terrones* as authority for the introduction of evidence *in camera* without any summary or notice concerning the nature of the evidence. The Second Circuit distinguished *Acevedo-Ramos* and *Accetturo*:

> *Accetturo* and *Acevedo-Ramos* do not, in fact, support the government's position. These cases are distinguishable from the one before us in an important respect: neither involves an *ex parte* submission as the government's sole basis for opposing bail release; rather, these cases consider the use of *ex parte* evidence to corroborate testimony offered in open court. In short, in these cases the defendants plainly had notice of the reasons why the government opposed bail release; what was withheld was certain corroborating evidence supporting those reasons.
>
> Even in this narrower context, however, the Third Circuit in *Accetturo* concluded that an *ex parte* submission should not have been considered. *See* 783 F.2d at 391. The court emphasized that a defendant seeking bail release has "the right to know what information is being submitted to the decisionmaker and the opportunity to challenge the reliability of the government's sources as well as provide contrary information." *Id.* at 390; *see also United States v. Wind,* 527

F.2d 672, 676 (6th Cir.1975) (rejecting reliance on *ex parte* evidence in case arising before enactment of Bail Reform Act of 1984: "In general, we disapprove of the practice as being inconsistent with the right to a hearing and the opportunity to refute."). It noted that an exception to this rule might be recognized only "on rare occasions" where the government demonstrates "a most compelling need and no alternative means of meeting that need." *United States v. Accetturo,* 783 F.2d at 391. The court ruled that the case before it did not fit within this narrow exception. Indeed, the court predicted that few such cases would arise because the government could present its opposition to bail release through hearsay evidence. *Id.*

In *Acevedo-Ramos,* no *ex parte* evidence was, in fact, at issue. Instead, the First Circuit, in *dictum,* raised the possibility that, in limited circumstances, such evidence might be considered to corroborate hearsay testimony given in open court to oppose bail release. In *Acevedo-Ramos,* a federal agent had given detailed hearsay testimony-based on undisclosed informant reports and wiretap intercepts-implicating the defendant in eight specific crimes, including murders, armed robberies, and obstruction of justice. *See United States v. Acevedo-Ramos,* 755 F.2d at 205. Rejecting the defendant's hearsay challenge to this evidence, then Circuit Judge Breyer, writing for the panel, noted that a district court's "sensible exercise" of its power "selectively to insist[ ] upon the production of the underlying evidence or evidentiary sources" adequately protected a "defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or ... discovery expedition." *Id.* at 207-08. Judge Breyer then added the observation relied on by the government in this case:

> [E]ven in an unusual case, where the government provides strong special reasons for keeping its evidentiary sources confidential (e.g., protecting witness safety), the magistrate or judge, upon defendant's request, can still test the veracity of the government's testimony and the quality of the underlying evidence, by, for example, listening to tapes or reading documents in camera.

*Id.* at 208.

*Abuhamra,* at 326-327.

The Second Circuit Court went on to reject the Court's reasoning and holding in *Terrones* insofar as it authorized the receipt of evidence *in camera* without notice or summary of its substance to the defendant:

> The district court in *United States v. Terrones,* 712 F.Supp. 786, did not condition its approval of *ex parte* submissions on a gist or substance requirement, but its "more liberal view" of *ex parte* evidence in opposition to bail release has not been embraced by other courts. *See United States v. Eischeid,* 315 F.Supp.2d 1033, 1036 n. 1 (D.Ariz.2003) (observing that the "the First and Third Circuit decisions [in *Acevedo-Ramos* and *Accetturo* ] are more consistent with the procedural protections of the [Bail Reform] Act and fundamental notions of due process" than the decision in *Terrones,* the court refused to "mak[e] a detention decision based on evidence that has not been presented to or even summarized for" the defendant); *cf. United States v. Stanford,* 551 F.Supp. 209, 211 (D.Md.1982) (allowing submission of sealed affidavit pertaining to threats to government

> witness because defendant was provided with an "accurate and complete" summary of the affidavit, affording him an opportunity to refute its allegations).
>
> We too are disinclined to rely on the reasoning of *Terrones* in resolving this appeal. While we agree with its observation that the Bail Reform Act does not specifically preclude *ex parte* review of evidence, *see United States v. Terrones,* 712 F.Supp. at 791, we conclude, for reasons already discussed, that the right to a fair hearing implicit in § 3143(a)(1) necessarily requires some notice of any reasons advanced by the government in opposition to bail release and a reasonable opportunity to respond, *cf. United States v. Accetturo,* 783 F.2d at 391 (observing that implicit in the Bail Reform Act's pre-trial hearing requirement is the right to notice of any information presented by the government and an opportunity to challenge that submission); *United States v. Wind,* 527 F.2d at 676. To the extent *Terrones* cites the informant privilege in upholding *ex parte* submissions against a due process challenge, *see United States v. Terrones,* 712 F.Supp. at 793, we note that the court does not there distinguish between invocation of the privilege to withhold an informant's name, which raises few, if any, due process concerns at a bail hearing, and its invocation of the privilege to withhold the substance of evidence derived from confidential sources, the focus of our attention in this case. Finally, we do not share *Terrones* 's view that *ex parte* submissions at bail hearings are analogous to *ex parte* submissions in support of arrest and search warrants, or wire-tap authorizations. *See id.* The competing interests at stake in connection with the issuance of warrants and wire-tap authorizations confer no pre-issuance right to an adversarial hearing on any person. Once such orders are executed, however, the *ex parte* submissions are generally unsealed-in the case of arrest and search warrants, usually immediately-and parties whose liberty or property interests are affected are afforded opportunities to challenge the legality of the actions. *See, e.g.,* Fed.R.Crim.P. 5.1(c) , 12(b)(4). By contrast, in this case, the parties' dispute is not limited to whether a defendant seeking bail is entitled to a pre- or post-deprivation hearing. The government does not seek simply to delay disclosure of the *ex parte* information to Abuhamra; it argues that, to shield the confidential source of that information, it can avoid any disclosure of its opposition-even of its gist or substance-indefinitely. We reject this position.

*Abuhamra*, at 327 - 328.

There is no need here to restate the Second Circuit's thorough analysis of the proper balance between the competing interests with respect to *in camera* or *ex parte* submissions of evidence at bail hearings. The Second Circuit held:

> To summarize, we conclude that a court should generally not rely on evidence submitted by the government *ex parte* and *in camera* in ruling on a criminal defendant's application for release on bail. An exception to this rule may be made only in rare cases where (1) the government advances an overriding interest that is likely to be prejudiced by disclosure of the evidence at issue, (2) the order sealing the evidence is no broader than necessary to protect that interest, (3) the district court considers reasonable alternatives to proceeding *ex parte,* (4) the court makes findings adequate to support an *ex parte* proceeding, (5) the government discloses the substance of its *ex parte* submission to the defense, and (6) the district court

7

engages in heightened scrutiny of the reliability of the *ex parte* submissions. *Abuhamra*, at 332.  This holding sets out the minimum protections for the defendant's right to notice, fair hearing and due process in bail hearings and should be applied to all requests to produce evidence *in camera* at bail hearings.

## ORDER

Based upon the foregoing, the Government's offer of evidence *in camera* is rejected.

It is hereby ORDERED that defendant Nafiz Abdulla Musleh be released on the following terms and conditions:

1. You shall be released on a $100,000 property bond secured by the property owned by Muheyeddin Musleh at 15825 W. Monterey Lane, Kerman, California;
2. You shall report to and comply with the rules and regulations of the Pretrial Services Agency;
3. You shall report in person to the Pretrial Services Agency on the first working day following your release from custody;
4. You shall reside at a residence approved by Pretrial Services;
5. You shall participate in the following home confinement program components and abide by all the requirements of the program which will include electronic monitoring;
6. You shall, in accordance with this release order, have a Home Monitoring Unit installed in your residence, a radio frequency transmitter device attached to your person, and shall comply with all instructions for the use and operation of said devices as given to you by the Pretrial Services Agency and employees of the contracted electronic monitoring company;
7. You shall be personally responsible for the cost of your participation in the Electronic Monitoring Program and shall pay the monthly fee as instructed by the Pretrial Services Agency;

8. Your travel is restricted to Eastern District of California unless otherwise approved in advance by the Pretrial Services Officer;

9. You shall refrain from excessive use of alcohol or any use or possession of a narcotic drug or other controlled substance without a prescription by a licensed medical practitioner;

10. You shall report any prescriptions to the Pretrial Services Officer within 48 hours of receipt;

11. You shall submit to drug and/or alcohol testing as directed by the Pretrial Services Officer;

12. You shall seek and/or maintain employment, and provide proof thereof to the Pretrial Services Officer upon request;

13. You shall surrender your passport to the Clerk of the U. S. District Court;

14. You shall obtain no passport during the pendency of the present matter;

15. You shall not associate or have any contact with Ali Mahmoud Musleh, Riyadh Mohamed Nagi, and Tofeek Gobran Albanna unless in the presence of counsel or otherwise approved in advance by the Pretrial Services Officer;

16. You shall not possess a firearm, destructive device, or other dangerous weapon; and,

17. You shall submit to the search of your person, property, residence, and vehicle by the Pretrial Services Officer, and any other law enforcement officer under the immediate and personal supervision of the Pretrial Services Officer, without a search warrant.

IT IS SO ORDERED.

Dated:   August 22, 2005                              /s/ Dennis L. Beck
3b142a                                           UNITED STATES MAGISTRATE JUDGE